IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 3:08-CR-138-MEF |
| | ) | |
| WILLIE CURRY JOHNSON | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On June 25, 2008, Johnson was indicted for conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 18 U.S.C. § 846 (Count 1); distribution of cocaine base in violation of 18 U.S.C. § 841(a)(1) (Count 2); distribution of cocaine in violation of 18 U.S.C. § 841(a)(1) (Counts 3 and 4); and possession of a weapon after conviction for a felony in violation of 18 U.S.C. § 922(g)(1) (Count 5).  On November 17, 2008, Johnson filed a motion to suppress physical evidence (doc. # 41) and a motion to suppress oral and written statement (doc. # 42).  The court held a hearing on these motions on December 1, 2008.  Following that hearing, the parties filed briefs (doc. # # 56, 57, 58 and 59), and the motions are now under submission.  After careful review of the briefs and the evidence presented to the court, the court concludes that the motions are due to be denied.

## SEARCH OF JOHNSON'S RESIDENCE[1]

On October 29, 2007, Tallapoosa County Deputy Sheriff Josh McAllister applied

---

[1]In the original motion to suppress, Johnson argued that the shotgun should be suppressed because it was not located in plain sight and weapons were not specified in the warrant.  The defendant has withdrawn that argument.  *See* Def. 's Am. Br. at 8 (doc. # 57).

for a search warrant to search the residence of Willie Curry Johnson.  The affidavit filed

in support of the application described in detail the address and location of Johnson's

residence located at 15 Johnson Drive, Jackson's Gap, Alabama.  To establish probable

cause, McAllister averred as follows:

> Within the last forty-eight (48) hours a confidential informant, who has
> proven reliable in the past was in the residence of Willie Curry Johnson and
> saw him in possession of Crack Cocaine inside his residence.  The
> informant left the residence and contacted me. The informant has provided
> information such as this that has resulted in numerous narcotics arrests and
> convictions.  Over the past two years, the Tallapoosa County Narcotics
> Task Force, along with State and Federal Agencies has been receiving
> information concerning narcotics being distributed from this residence.
> Willie Curry Johnson also has three outstanding trafficking in cocaine
> warrant through the Tallapoosa County Sheriff's Department.

The issuing judge authorized a search for "Crack Cocaine and/or any controlled

substance, any documentation of drug transactions and any proceeds from the distribution

of said substances."  During the search, law enforcement officers found a Mossberg

shotgun,[2] 3 shotgun shells, a marijuana filled cigar, a glass jar containing marijuana and

$4540.00 in currency.  Johnson was arrested at his residence.

Johnson contends that affidavit supporting the issuance of the search warrant did

not establish probable cause

> where it is unclear from the affidavit whether the confidential informant
> observed the drugs at this location or at 46 Johnson Drive,[3] where there was

---

[2]The shotgun was found under a bed. (Tr. Ev. Hr. at 9).

[3]This is the residence of Contessa Ford, Johnson's sister-in-law. ( Tr. Ev. Hr. at 29)  McAllister's
partner, Fred White, (Tr. Ev. Hr. at 7) sought and secured a warrant for a search of Ford's residence at 46
Johnson Drive.

insufficient corroboration of the informant's statements relating to drugs being at 15 Johnson Drive regardless of where the informant alleges he saw them, where guns were not described as items to be searched for and/or seized in the warrant and where the gun found was not in plain view but under a bed.

The Fourth Amendment provides for the right to be free of unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir.1999) (citation omitted). A court reviewing the issuance of a search warrant by a magistrate or state court judge is not to conduct a de novo probable cause determination, but is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984)(per curiam); *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The reviewing court must decide whether there was a "substantial basis" solely upon consideration of the information presented to the issuing judicial officer. *United States v. Lockett*, 674 F.2d 843 (11th Cir. 1982). Moreover, probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual contexts[.]" *Brundidge*, 170 F.3d at 1352 .

Under the *Gates* totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs ... for assessing the usefulness of an informant's tips, are not independent. '[T]hey are better understood as relevant

3

considerations in the totality of the circumstances analysis that traditionally
has guided probable cause determinations: a deficiency in one may be
compensated for ... by a strong showing as to the other[.]'

*Id.* at 1352-53.

Johnson suggests that in the affidavit there is ambiguity about the location of the
drugs.  To make that point he refers to a second warrant which the same judge issued for
46 Johnson Drive.  There is no ambiguity in the warrant application for 15 Johnson Drive.
The first paragraph of the supporting affidavit describes the location particularly as "the
premises of Willie Curry Johnson and Lacrista Ford, located at 15 Johnson Drive  . . . "
The second paragraph of the affidavit states that drugs were seen "at the residence of
Willie Curry Johnson  . . . "   The only possible way that ambiguity could exist is by
comparing this application with the application for the second warrant and by assuming
that the issuing judge was confused.  In other words, the ambiguity argument is premised
on rank speculation in which the court declines to indulge.

Johnson argues that the affidavit fails to establish probable cause to believe that
contraband was located at 15 Johnson Drive.  The primary thrust of the argument seems
to be that the confidential informant's information was not independently corroborated.
That argument fails.  Suppression is only warranted if the affidavit was "so lacking in
indicia of probable cause as to render official belief in its existence entirely
unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975).  Here, the evidence shows
that the confidential informant did more than aver that drugs were located in the
residence; he stated that he had entered the residence and saw drugs in the possession of

4

Johnson inside the residence. "[A]n 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case.' " *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.1994) (quoting *Gates*, 462 U.S. at 234, 103 S.Ct. 2317). The affiant described the informant's prior assistance to law enforcement officers which consisted of providing "information such as this that has resulted in numerous narcotics arrest and convictions." Thus, the informant's past reliability provides weight to his observations. *See Gates*, 462 U.S. at 233. Additionally, the affidavit informed the issuing judge that three outstanding cocaine trafficking warrants existed for Johnson. These facts amply establish a substantial basis to believe that illegal substances were present in the residence at 15 Johnson Drive. The lack of independent corroboration is insufficient to discount the weight of those facts. Probable cause existed, and Johnson's motion to suppress should be denied.

## THE COERCED STATEMENT

Johnson first challenges the sufficiency of his waiver of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

> The Government attempted to show through testimony that the Defendant's Miranda rights were read to him by a law enforcement officer during the process of the search of the Defendant's residence. The Defendant does not recall this reading and if the Defendant's rights were read to him the reading occurred after both he and his wife were handcuffed, his front door had been knocked down, his children were crying and men were rummaging through his house. The Government has provided no evidence besides a signed statement prepared for the Defendant which states "I understand the rights DEA Agent Halasz read to me" and two oral

5

> statements where the police officers claim that the Defendant's rights have
> been read to him and that the Defendant understood them. These statements
> do not demonstrate that the Defendant waived his rights with a full
> awareness of the nature of the rights he was waiving and awareness of the
> consequences of his decision. The Defendant respectfully submits that the
> reading of any rights to the Defendant in the circumstances they were
> allegedly read was insufficient.

Def.s' Br. at 9 (doc. # 57).

It is well-established that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.  A waiver of rights under *Miranda* may be explicit, or it may be implied by the defendant's actions and words.  *See North Carolina v. Butler*, 441 U.S. 369, 373-76 (1979).  The threshold inquiry in determining whether a waiver of *Miranda* rights is valid is whether the defendant was informed of his Miranda rights.  *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir.1995).  Next, the court examines whether a defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent. *Id*. (citation omitted). First, the relinquishment of *Miranda* rights must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Id*. (citation omitted). Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. (citation omitted). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an

6

uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Id*. (citation omitted).

Based on the facts presented during the evidentiary hearing, the court finds that Agent Halasz read Johnson his *Miranda* rights.  While Johnson states that he does not recall the rights explanation, he does not deny that law enforcement officers explained his rights to him.  "They might have did; but I was so scared and nervous, you know what I'm saying, that if they did give them to me, I didn't understand. You know what I'm saying? They went ahead and read them, but I don't -- I don't recall it; but, you know what I'm saying, they might have did."  Tr. Hr. at 50.

Johnson further claims that he did not fully understand his rights; therefore, he contends that any waiver of those rights was not attended by a full awareness of the nature of the rights he was waiving and awareness of the consequences of his decision. The court is unpersuaded.  Johnson argues that he was scared and nervous at his residence and that this frightful situation was exacerbated because his children were "crying and hollering" and his wife was in handcuffs. Tr. Hr. at 51.  However, Johnson did not give a statement at his residence.  The undisputed facts show that it was not until after he arrived at the ABI office that he gave a statement.  That statement was given only after he was reminded of his *Miranda* rights.

Q. Did you sign a statement that Investigator McAllister prepared?
A. Yes, sir.
Q. Okay. Were you advised of any rights prior to that particular statement being given?
A. I can't remember, but -- but I seen the sheet and it -- and it -- and it had it

7

on there. So he must have did read them, but I don't recall it, no.

Tr. Hr. at 52-53.

By the time this statement was given, Johnson was removed from the turmoil at his residence. On the ride to the police office he had talked intelligently with officers about his situation as well as that of his relatives. At the ABI office, DEA Agent Halasz testified that the first thing he did was remind Johnson about his *Miranda* rights which he said he recalled being read to him. Tr. Hr. at 64. Johnson admitted at that time that Contessa Ford knew nothing about the cocaine he put in her trailer. Tr. Hr. at 65. This admission demonstrates that Johnson was well aware of the consequences of the drugs which officers had found and that he sought to protect his sister-in-law from those consequences. Far from showing a lack of understanding, the admission shows that Johnson fully understood what he was doing. *Cf. Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959) ("We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments.") It is also instructive that this was hardly Johnson's first experience with the criminal justice system. He was previously convicted of possession of cocaine for which he was sentenced to five years imprisonment. *See* Notice of Information To Establish Prior Conviction, doc. # 38.

Based on the evidence presented to the court as well as the court's assessment of

each of the witnesses and their demeanor, the court finds that Johnson was advised of his *Miranda* rights and that his abandonment of those rights was made with a full awareness of those rights and the consequences of abandonment. With this conclusion, the last question before the court is whether Johnson's waiver of his rights was the product of coercion. Johnson contends that his confession was coerced because the law enforcement officers threatened to arrest his wife and sister-in-law.

The Due Process Clause of the Fourteenth Amendment requires that, to be admissible, an accused's confession must be voluntary, in that the accused "made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir.1980) (en banc) (synthesizing Supreme Court "expressions ... of the fundamental requirements for voluntariness."). *See also McCoy v. Newsome*, 953 F.2d 1252, 1263 (11th Cir.1992) (per curiam). Voluntariness is measured by the totality of the circumstances. *Id.* A court looks to such factors as whether the defendant was subjected to "an exhaustingly long interrogation," whether the interrogators applied physical force to the defendant or threatened to do so, and whether the interrogators made promises to induce the defendant's statements. *United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir.2005).

Under certain circumstances, the Supreme Court has found that police deception invalidates an accused's waiver of the Fifth Amendment privilege. *See, e.g., Lynumn v. Illinois*, 372 U.S. 528 (1963) (misrepresentation by police officers that a suspect would

be deprived of state financial aid for her dependent child if she failed to cooperate with authorities rendered the subsequent confession involuntary); *Rogers v. Richmond*, 365 U.S. 534  (1961) (confession involuntary where defendant confessed when police chief pretended that if defendant did not confess the defendant's ailing wife would be arrested). In this circuit, whether a threat to prosecute a third party is coercive depends upon whether law enforcement officers had probable cause to believe that the third party had committed a crime at the time that the threat was made.  *Martin v. Kemp*, 760 F.2d 1244, 1247-49 (11th Cir.1985). *See also United States v. Nuckols*, 606 F.2d 566, 568-70 (5th Cir.1979).  The defendant bears the "heavy burden" of showing that at the time the threats were made, the police did not have probable cause to believe that the third party had committed a crime.  *Martin*, 760 F.2d at 1247-48.  *See also Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir.2001) (holding there was no police coercion when police officer told the accused that his girlfriend would be charged for murder unless he confessed, because the officer had probable cause to arrest the girlfriend for murder).

It is correct that the agents discussed with Johnson the possible arrest of his relatives.

> Q. Was there any conversation between yourself or Detective Armour with Mr. Johnson during that ride?
> A. There -- there would have been minor conversation about his situation as far as legal charges being brought against him. And I believe Agent Armour may have said that other people could be arrested as well, and one of them being Contessa Ford.
> Q. Was that information given as -- in a manner of a threat of some sort?
> A. No.

Q. Okay. And was that based upon the search of 46 Johnson Drive?
A. Based upon cocaine being found in that -- in Contessa Ford's trailer.
Q. Was that cocaine located, then, before Mr. Johnson was removed from the scene?
A. Yes.

Tr. Hr. at 62.

Nonetheless, Johnson fails to meet his "heavy burden."  The undisputed facts show that at Contessa Ford's residence officers found cocaine.  Despite Johnson's statement that he hid the cocaine there, and she knew nothing about it, the cocaine provided ample probable cause to support arrest of Contessa.[4]

During the search of Johnson's residence officers found a small quantity of "personal use" marijuana.  As agent Halasz testified, "there would have been probable cause to arrest her for possession of personal use amount of marijuana, yes." Tr. Hr. at 70.  Given the undisputed facts about the results of the searches, as a matter of law, any threats to arrest either Lacrista Ford or Contessa Ford are not coercive in derogation of Johnson's rights.

## CONCLUSION

In short, the court finds that probable cause supported the issuance of the warrant for the search of Johnson's residence at 15 Johnson Drive.  The court finds that Johnson's statements to police were made after law enforcement officers gave Johnson his *Miranda*

---

[4]Contessa Ford was not at home at the time of the search, and she was never arrested.

rights and that the statements were voluntary and made with an understanding of those rights and the consequences of relinquishment of the rights.  In other words, Johnson's motions to suppress are due to be denied.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motions to suppress be denied.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before January 20, 2009**.[5]  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of

---

[5]This case is set for trial on January 26, 2009, in Opelika, Alabama.  Because of this trial setting, the court shortens the 18 U.S.C. § 636 time for filing objections to afford the district judge time to consider this Recommendations and any objections to it.

business on September 30, 1981.

Done this 12th day of January, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE